UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NUMBER:  6:23-cr-00205-005 |
| VERSUS | |
| | DISTRICT JUDGE SUMMERHAYES |
| DREKEYLONE PETERS | MAGISTRATE JUDGE WHITEHURST |

**DEFENDANT'S REPLY TO GOVERNMENT'S
RESPONSE TO DEFENDANT'S MOTION FOR JAMES HEARING**

**NOW INTO COURT**, through undersigned counsel, comes the defendant, Drekeylone Peters, who submits this reply to the government's response to the defendant's motion for a *James* hearing.

I.   **The Defendant's Motion**

In *United States v. James, 590 F.2d 575 (5th Cir. 1979)*, the Fifth Circuit Court of Appeals exercised its supervisory authority over lower courts and ruled that in criminal cases involving alleged conspiracies, a district court should, when feasible, conduct a pre-trial hearing to determine the admissibility of co-conspirator statements the government intends to introduce into evidence at the trial, when requested to do so by the defendant. The reason for this rule is that the Court, not the jury, rules on preliminary matters involving the admissibility of evidence.

This basic principle is found in *Federal Rule of Evidence 104(a)* which provides that "(p)reliminary questions concerning . . . the admissibility of evidence shall be determined by the court," and *Federal Rule of Evidence 801(d)(2)(E)*, that governs the admissibility of statements of co-conspirators and sets the standard for determining admissibility.

1

Before admitting a co-conspirator's statement over an objection that it does not meet the requirements of *Federal Rule of Evidence 801(d)(2)(E)*, the party seeking to admit the evidence must prove to the court, by a preponderance of the evidence, that the statement falls within the definition of a co-conspirator statement. See, *United States v. James, 590 F.2d 575 (5th Cir. 1979) and Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)*

The government must prove, more likely than not, that there was a conspiracy, as alleged specifically in the indictment, that the conspiracy involved the declarant and the defendant, and that the declarant's out of court statement implicating the defendant was made during and in furtherance of the conspiracy. The government has the burden to prove each of those elements by a preponderance of the evidence before the evidence can be admitted. *See, Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)*

The government seems to believe that this is a simple exercise, quickly handled during the trial. But that is seldom the case, and if the jury is exposed to inadmissible evidence, this will require a mistrial. In a conspiracy involving multiple defendants, as is this indictment, the proof is often complicated by the fact that the evidence often turns on whether the government has proved the conspiracy alleged in the indictment, or some other conspiracy. In that regard, the Fifth Circuit's Pattern Jury Instruction 2.16, calls for an explanation to the jury of the principle of "multiple conspiracies." If the government fails to prove the conspiracy alleged in the indictment or if the government proves some other conspiracy, the jury is instructed that it must find the defendant not guilty. It is an instruction that this defendant requests for the trial.

Before admitting such evidence, the Court must also weigh other equally relevant factors. A conspiracy conviction may not rest on an "agreement" with a government informer. "[A]s it takes two to conspire, there can be no indictable conspiracy with a government informer who

secretly intends to frustrate the conspiracy." *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965). *See also United States v. Corson*, 579 F.3d 804, 811 (7th Cir. 2009) ("[A]n agreement must exist among *coconspirators*, that is, those who actually intend to carry out the agreed-upon criminal plan. A defendant is not liable for conspiring solely with an undercover government agent or a government informant." (citation omitted)); *United States v. Paret-Ruiz*, 567 F.3d 1, 6 (1st Cir. 2009) ("The agreement must exist between two or more persons, and as a matter of law, there can be no conspiracy between a defendant and a government agent."); *United States v. Carlton*, 442 F.3d 802, 811 (2d Cir. 2006) ("The agreement to conspire requires that at least two culpable co-conspirators agree, and a `person who enters into such an agreement while acting as an agent of the government, either directly or as a confidential informant, lacks the criminal intent necessary to render him a *bona fide* co-conspirator.'" (quoting *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997))). Thus, evidence of an agreement a defendant might have with a government informant cannot support a conspiracy conviction, and should not be admitted at a trial, as proof of a conspiracy.

"(A) buyer-seller relationship, without more, will not prove a conspiracy." *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993) (citing *United States v. Hughes*, 817 F.2d 268, 273 (5th Cir. 1987)); *United States v. Thomas*, 12 F.3d 1350, 1365 (5th Cir. 1994) (same). *See also United States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009); *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009); *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999); *United States v. Manzella*, 791 F.2d 1263, 1265 (7th Cir. 1986); *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986); *United States v. Keck*, 773 F.2d 759, 768 (7th Cir. 1985); *United States v. Hyman*, 741 F.2d 906, 914 (7th Cir. 1984); *United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984);

*United States v. Solomon*, 686 F.2d 863, 876 (11th Cir. 1982); *United States v. Creamer*, 555 F.2d 612, 615 (7th Cir. 1977).

To sustain a conspiracy allegation, "[w]hat is necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself." *United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008). "While . . . the unlawful transfer from seller to buyer cannot serve as the basis for a charge that the seller and buyer conspired with one another to make the illegal transfer from seller to buyer, the rule does not protect either the seller or buyer from a charge they conspired together to transfer drugs if the evidence supports a finding that they shared a conspiratorial purpose to advance other transfers. . . ." *United States v. Parker*, 554 F.3d 230, 235 (2d Cir. 2009). "What distinguishes a conspiracy from its substantive predicate offense is not just the presence of any agreement, but an agreement with the same joint criminal objective, the joint objective of distributing drugs. This joint objective is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs. Although the parties to the sales agreement may both agree to commit a crime, they do not have the joint criminal objective of distributing drugs." *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). It is axiomatic that more is required than mere knowledge of the purpose of a conspiracy." *United States v. Boidi*, 568 F.3d 24, 30 (1st Cir. 2009) (quoting *United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008)) (citing *Lechuga*, 994 F.2d at 349; *United States v. Glenn*, 828 F.2d 855, 857-58 (1st Cir. 1987) (Breyer, J.)).

In the case of a seller/buyer transaction, the government must prove, not only that the seller knew the buyer would engage in further distribution, but that the seller intended and agreed to the shared purpose of further distribution. "There may be circumstances in which the evidence of knowledge is clear, yet the further step of finding the required intent cannot be taken. . . .

4

[N]ot every instance of sale of restricted goods . . . in which the seller knows the buyer intends to use them unlawfully, will support a charge of conspiracy." *Direct Sales Co. v. United States*, 319 U.S. 703, 712, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). *See also* 2 LaFave, *supra*, § 12.2(c)(3) (emphasizing the importance of "the step from knowledge to intent and agreement" in *Direct Sales*). Thus, the government fails to prove its case for conspiracy only on the inference that a seller of a large quantity of narcotics must know the buyer intends to further distribute those drugs. *See United States v. Boidi*, 568 F.3d 24, 30 (1st Cir. 2009) ("But a conspiracy is an agreement between two (or more) parties having a shared `objective' or `design' to commit the crime, so mere knowledge by [the seller] as to what [the buyer] would do with the drugs is not enough unless [the seller] shared [the buyer's] purpose to redistribute."); *United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008) This is true even if the seller is aware of the buyer's intent to resell. It is axiomatic that more is required than mere knowledge of the purpose of a conspiracy."). *See also Developments in the Law — Criminal Conspiracy*, 72 Harv. L. Rev. 922, 930 (1959) ("Clearly [a conspiracy's purpose] cannot be the object unless it is known to both parties; but something more than mere knowledge is necessary."). *See also United States v. Parker*, 554 F.3d 230, 236 (2d Cir. 2009) (holding that, when wholesale quantities of drugs are involved, "the liability of buyer and seller for having conspired together to transfer drugs would depend not on the seller's mere knowledge of the buyer's intent to retransfer, but on a further showing of the seller's interest, shared with the buyer, in the success of the buyer's resale"); *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001) ("Showing that the buyer purchased a quantity larger than could be used for personal consumption . . . is not enough to show conspiracy on behalf of the seller. Nor is the seller's knowledge of the buyer's illegal activities or resale objectives enough." (citations omitted)); *United States v. Price*, 13 F.3d 711, 727 (3d Cir.

5

1994) ("The prevalent case law does not hold that every one-time purchaser of drugs from a member of a large conspiracy, even for redistribution, necessarily becomes a member of that conspiracy.").

In *James, id.,* the Fifth Circuit identified the danger to a defendant in a conspiracy trial when the government introduces an alleged coconspirator's statement, and the co-conspirator will not testify at trial, but which directly implicates the defendant, before laying the foundation for its admission. As the *James* court noted, Courts have on occasion allowed such statements to be heard by the jury (during the trial), upon the promise that the prosecutor will "connect it up." If it is "connected up," the defendant suffers no prejudice, but if the judge concludes, at the end of the trial, that the government has failed to prove the proper foundation, the defendant will have been prejudiced, and this will generally require a mistrial. For that reason, the *James* Court encouraged and recognized the importance of a pretrial hearing on the admissibility of such statements. *James, 590 F.2d 575*

## II.  **The Government's Response**

The government argues *Bourjaily* implicitly overruled *James*. This is incorrect. In *Bourjaily*, the Supreme Court answered the three questions for which it granted certiorari. Those questions concerned whether the declarant's statement itself, along with other evidence, can be considered by the presiding judge in determining whether the government proved the admissibility of the out of court statement, what burden of proof is imposed on the government to prove its admissibility, and whether the presiding judge must examine and determine the reliability of the out of court statement. Succinctly, the *Bourjaily* court explained it granted certiorari to rule only on the following matters, and the Court ruled only on those matters:

> (1) Whether the Court can consider the declarant's statement in determining if the government has met the admissibility requirements. *(It can and should. The*

> *admissibility requirements the government must prove for the Court are that (a) the conspiracy alleged in the indictment existed, (b) the defendant and the declarant were members of that conspiracy, and (c) the out of court statement was made in furtherance of that conspiracy.)*
> *(2)* Whether the government's burden of proof for admissibility is by a preponderance of the evidence. *(The Court ruled it was.)*
> *(3)* Whether the Court must also examine the circumstances of the out of court statement to determine its reliability. *(The Court should consider the statement itself and other relevant evidence in ruling on the admissibility.)*

In *Bourjaily*, the Supreme Court answered those three questions, and that is all the Court did. *Bourjaily* modified some language in the *James* case about whether the government can introduce the out-of-court statement as evidence to prove its admissibility at the *James* hearing, and how the trial judge should evaluate the government's evidence. But *Bourjaily* did not, directly, or implicitly, overrule *James*.

### III.     **The Conclusion**

The Fifth Circuit's preference for a *James* hearing remains in effect. The Fifth Circuit directed the lower courts to comply, when feasible, with its preference to conduct a pre-trial hearing on the admissibility of alleged co-conspirator statements. In this case, this defendant faces a sixteen-count indictment charging defendants with "multiple counts of conspiracy" to distribute and possess with intent to distribute controlled substances. *(Govt. Response, Doc. 107, Page 1)*

A *James* hearing is not only fair and orderly, for the reasons given by the Fifth Circuit, but such a hearing is a matter of fundamental fairness and Due Process. This is especially true, when, as here, multiple defendants will need fair notice, in advance of the trial, so each attorney for the multiple defendants can effectively prepare for the cross-examination of one or more alleged witnesses, who will convey to the jury the alleged out-of-court statements of one or more alleged co-conspirators, and those alleged co-conspirators will not testify at the trial.

Whether the out of court statements will be introduced to prove "one or more conspiracies" and whether the Government makes the required showing to introduce that evidence at the trial is a matter for the Court to decide, at a pretrial hearing, so the jury will not be tainted, and the defense attorneys will have fair notice to effectively prepare for the trial.

With the above principles in mind, it is quite feasible for the government to be required to prove, at a pretrial hearing, by a preponderance of the evidence, that it will meet the requirements for admission of the out-of-court statements, especially when this case involves multiple defendants and "multiple counts of conspiracy."

The elements of proof are not particularly complicated. To admit the out-of-court statement, the government merely needs to prove to the Court, before trial, that it is more likely than not that there was a conspiratorial relationship between the declarant and the defendant against whom the statement will be offered, that they were members of the same conspiracy, and that the statement was made during the course of and in furtherance of that conspiracy's objectives. In considering whether the government has offered sufficient proof at the hearing, the government can submit the statement itself for consideration by the Court, along with other evidence the government may have.

In conclusion, the Court should order a *James* hearing. Before the pre-trial hearing, the Court should also order the government to provide notice to this defendant of the out-of-court statements the government intends to admit into evidence at the trial. The declarant will not testify, so the statement itself is the evidence, along with the third party who will submit the evidence or offer the statement. This will give the defendant an opportunity to object, if he wishes to do so, and will allow the Court to properly conduct a *James* hearing.

Such notice and opportunity will help guarantee that the trial is fair and orderly, and that the defendant will have the effective assistance of counsel at the trial, consistent with Due Process.

> **BOUSTANY LAW FIRM**
> **(A Professional Law Corporation)**
>
> BY: <u>s/Alfred F. Boustany, II</u>
>      ALFRED F. BOUSTANY, II
>      Bar Number: 03329
>      421 West Vermilion Street
>      Post Office Box 4626
>      Lafayette, Louisiana 70502
>      (337) 261-0225
>      Afb2@Boustanylawfirm.com
>      Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing request for discovery was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

Lafayette, Louisiana this 12th day of October, 2023.

<u>s/Alfred F. Boustany, II</u>